STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss                          CIVIL ACTION
                                        DOCKET NO. AP-09-31
                                        REC -CUM- 12/24/2009

JILL D. McCOLLUM,
        Petitioner
                                        ORDER ON PETITIONER'S
v.                                      80C APPEAL

MAINE BOARD OF COUNSELING
PROFESSIONAL LICENSURE,
        Respondent

## BEFORE THE COURT

Petitioner Jill McCollum appeals a decision of the Maine Board of

Counseling Professional Licensure (hereinafter the "Board") pursuant to M.R.

Civ. P. 80C.

## BACKGROUND

Jill McCollum, Ph. D., L.C.P.C., is self-employed and maintains her office

in South Portland, where she provides therapy for her clients. McCollum earned

a Ph. D. with a major in clinical psychology in 1992 and was licensed in South

Carolina as a Licensed Professional Counselor in 1992.[1] McCollum moved to

Maine in 1999 where she became a Licensed Clinical Professional Counselor on

September 24, 2001. McCollum is also a licensed drug and alcohol counselor.

McCollum has never been licensed as a psychologist in the State of Maine.

On November 1, 2006, M.G. became one of McCollum's clients. M.G. is

female, and is in her late sixties. M.G. sought therapy for depression and anxiety

and was recommended to McCollum by a friend. M.G. had suicidal thoughts in

the recent past. She received treatment by at least ten different clinicians for

---

[1] While 1992 is the date provided in the record and in the Board's Findings of Facts,
according to McCollum's 80C Appeal, she earned her Ph. D. and was licensed in South
Carolina as a Licensed Professional Counselor in 1987.

1

Post-Traumatic Stress Disorder (PTSD) and Dissociative Identity Disorder (DID), also known as Multiple Personality Disorder. DID is a disorder defined as existing when an individual has two or more distinct personalities. It is difficult to provide counseling for DID because the alternate personalities may come and go or fragment according to the situation. Prior to M.G., McCollum had counseled one other DID client and attended DID training sessions. McCollum estimated that M.G. had at least ten alternate personalities. M.G. informed McCollum that she had been abused since about the age of three, and her various personalities spanned from age three to age sixteen. M.G. was being treated by a psychiatrist concurrent with her counseling with McCollum. By mid-May 2007, McCollum had conducted more than 48 single or double counseling sessions with M.G. During the course of treatment, McCollum never sought peer supervision to help her with M.G.'s case, which McCollum recognized as a complex and difficult case.

The Board's disciplinary actions against McCollum arise out of two events. First, McCollum misrepresented her credentials on a business card she gave to M.G. According to M.G., McCollum's office door had a sign designating her as a "Licensed Clinical Professional Counselor." In the course of counseling, McCollum gave M.G. a business card upon which she identified herself as a "Clinical Psychologist." Although McCollum is not a licensed psychologist in Maine, she testified that she likes to think of herself as a psychologist since she earned her doctorate in psychology. The card also bears the abbreviation "L.P.C.", the abbreviation in Maine for a licensed professional counselor. The business card does not identify McCollum as a "licensed clinical professional counselor," the license McCollum holds, which is considered to be a higher level

2

of licensure than a "L.P.C." Before McCollum gave M.G. the business card she added her home and cell phone numbers to it, but did not make any changes to the licensure information. McCollum claims that the cards were a gift from her son after she obtained her Ph.D. She claims that she meant to destroy all of the cards, and did not intend to be deceitful or fraudulent when she gave M.G. the card. She claims she was in a hurry because another client was in the waiting room. According to M.G., the card's wording confused her, and caused her to lose trust in McCollum.

The Board's second disciplinary action stems from a series of acts. M.G. had warned McCollum that she strongly opposed role-playing therapy techniques due to a prior unpleasant experience with another therapist. Nevertheless, on or about May 18, 2007, McCollum initiated anger work with towel therapy, which consists of M.G. pulling and twisting and giving words to the anger while McCollum gave resistance and encouragement. During the towel therapy, McCollum claims she heard M.G. say, "Johnny, you said it was okay (to do the sexual act)." To encourage M.G., McCollum claims she said, "It's okay." M.G., or an alternative personality, apparently thought McCollum said, "Just slip it in." McCollum says that she stated that "I am not your brother" and the activity abruptly stopped. This incident contributed to M.G.'s growing distrust of McCollum and prompted some suicidal thoughts.

In an effort to re-establish trust, McCollum offered to call M.G. every day for four consecutive days. The Board found that McCollum only attempted to call on the first day. McCollum says she followed through on the first two days. McCollum says that on the night before the third call, two of her pet cats went missing for three days, and were later found severely harmed by a probable

3

raccoon attack. This prevented McCollum from following through on her promise to call M.G. on the third day because McCollum was distraught and thought her phone call would cause more harm than good. M.G. was disturbed by this breach and became angry, belligerent, and resentful. M.G. called McCollum on the fourth day before McCollum had a chance to call her, and expressed her feelings. M.G. terminated the counseling relationship on June 27, 2007. McCollum left M.G. a phone message saying she "honored [M.G.'s] decision and would close my file that day and there would be no second chances . . ." such that M.G. would not be accepted back into counseling. Two and one half weeks later, McCollum called M.G. to inquire about M.G.'s health. M.G. was interested in resuming therapy and McCollum agreed. Their sessions however were unproductive and the relationship was terminated for good on or about July 18, 2007.

On September 26, 2007, M.G. filed a Complaint against McCollum. On April 7, 2009, the Maine Board of Counseling Professional Licensure sent a Notice of Hearing to McCollum based on M.G.'s Complaint. An Amended Notice of Hearing was sent on April 24, 2009. M.G.'s Complaint alleged that McCollum engaged in five counts of unprofessional conduct. In particular, Counts I and V in the April 24, 2009, Notice of Hearing alleged that McCollum did the following:

(1) Represented [herself] as [a] clinical psychologist to [M.G.] on multiple occasions including presenting her with several business cards on which [McCollum] so identified [herself], although [she] did not then and never have held a license to practice as [a] psychologist in the State of Maine;

(5) Failed to abide by rules established by [her] with respect to the therapeutic relationship with [M.G.]. Specifically, [she] failed to follow through with a short-term intervention of a promised series of telephone calls and both contacted and re-engaged in a professional counseling relationship [sic] [M.G.] after termination and after an [sic] affirmatively

4

stating that the professional counseling relationship would not be re-established.

Amended Notice of Hearing from Maine Dept. of Prof'l Licensing to Jill D. McCollum (Apr. 24, 2009) (Administrative Record, Exhibit 1A). A hearing was held on May 15, 2009. Following the hearing, the Board issued a decision on June 22, 2009. Based on the Board's findings of facts and the evidence in the record, including expert testimony, the Board voted 6-1 that McCollum had violated 32 M.R.S. § 13861(F)[2] and Chapter 8, section 3 of the Board's Code of Ethics[3] with respect the allegations in Count I; and the Board voted 7-0 that McCollum had violated 32 M.R.S. § 13861(E)[4] with respect to the allegations in Count V.

As a result of the Board's findings: (1) the Board placed McCollum on probation for a period of one year, which includes meetings with a Disciplinary Supervisor who will provide instruction with respect to psychological trauma training, and recommend training on Dissociative Identity Disorders; (2) the Board required McCollum to pay $2,147.50 for the costs of the hearing; (3)

---

[2] 32 M.R.S. § 13861 was repealed in 2007. Because the Complaint was filed in September 2007 when § 13861 was still in effect, § 13861 applies to this case. 32 M.R.S. § 13861(F) provides that the Board's actions may be taken based on:
> Unprofessional conduct, which is the violation of any client bill of rights, standard of professional behavior or code of ethics adopted by the board.

[3] Chapter 8, section 3(A) of the Board's Code of Ethics provides:
> A licensee's . . . responsibility is to the client. The licensee . . . shall make every reasonable effort to protect the welfare and best interests of those who seek services . . . . Unprofessional conduct includes . . . (3) engaging in dishonesty, fraud, deceit or misrepresentation while performing professional services.

[4] 32 M.R.S. § 13861(E) provides that the Board's actions may be taken based on:
> Incompetence in the practice of counseling. A licensee . . . shall be deemed incompetent in the practice if the licensee . . . has engaged in conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee . . . to a client . . . or has engaged in conduct that evidences a lack of knowledge or inability to apply principles or skill to carry out the practice for which that person is licensed.

5

McCollum was given a warning for the violation in Count I; and (4) McCollum received censure for the violation in Count V.

On appeal, McCollum claims the following: (1) with respect to the business card incident, the punishment was too harsh and bore no relationship to the offense allegedly committed; (2) with respect to the events related to her treatment of M.G., she claims her conduct could not have been unprofessional because there is no prescribed blueprint or standard of care for the treatment of people with DID; and (3) she claims she did not receive due process in the proceeding before the Board.

## DISCUSSION

### I.      Standard of Review

In evaluating an 80C Appeal, it is not for the court to determine whether it would have reached the same result as the agency, but to decide whether the record contains competent and substantial evidence in support of the decision reached. *CWCO, Inc. v. Superintendent of Insurance*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261. The party seeking review of final agency action has the burden of proof. *Greely v. Comm'r, Dep't of Human Servs.*, 2000 ME 56, ¶ 9, 748 A.2d 472, 474. In order to meet this burden, a petitioner must demonstrate that the record compels a contrary conclusion. *Magnetic Resonance Technologies of Maine v. Comm'r, Maine Dep't of Human Servs.*, 652 A.2d 655, 659 (Me. 1995). The court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Maine Care Servs. v. Maine Dep't of Human Servs.*, 2002 Me. Super. LEXIS 143, *5-6.

### II.     Unprofessional Conduct and Professional Incompetence

6

Upon the review of the Board's findings and conclusions, and of McCollum's appeal, the court finds that substantial evidence supports the Board's decision. In an 80C appeal the burden is on the petitioner to demonstrate that the record compels a contrary conclusion. McCollum has not pointed to any evidence that suggests the Board's conclusions are unreasonable, unjust, or unlawful.

### III.    McCollum's Due Process Claim

McCollum claims that the process by which the Board reviews professional misconduct complaints deprived her of due process. The core of McCollum's claim is as follows: The person who brings a Complaint against a licensed professional can present facts to the board, without any counter-argument by the professional, inducing the board to bring a formal Complaint against the professional. In McCollum's view, at the hearing, "the Board decides whether or not it was initially correct in agreeing with the [person bringing the Complaint], which has the unbridled opportunity to sway and influence the Board before the professional has had one moment to defend herself."

McCollum's belief that the Board's procedure amounts to a deprivation of due process is founded upon an incorrect perception of the Board's role. Under 32 M.R.S. § 13861(3), a person seeking disciplinary action may file a Complaint with the Board alleging facts against a licensee. "If the board determines that a complaint alleges facts that, if true, would require . . . disciplinary action, the board shall conduct a hearing pursuant to the Maine Administrative Procedure Act." The process that McCollum deplores is designed to protect professionals in her position from frivolous claims. Furthermore, the hearing is designed to provide licensed professionals with an opportunity to explain their actions in

7

light of the charges brought against them. The hearing required by the Maine APA exists to guarantee that due process is afforded. 5 M.R.S. § 10003. The fact that the Board that screens Complaints is the same Board that oversees hearings does not mean that due process is violated.

As explained in the Respondent's brief, McCollum's due process claim fails based on the reasoning of *Withrow v. Larkins*, 421 U.S. 35, 47 (1975). In *Withrow*, a physician claimed that his procedural due process rights were violated because the same members of the state board that conducted investigations into allegations of professional misconduct would have also presided at his suspension hearing. The Supreme Court held:

> The initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation. Clearly, if the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question would be raised. But in our view, that is not this case. [The] combination of investigative and adjudicative functions does not, without more, constitute a due process violation.

*Withrow*, 421 U.S. at 58. In the instant case, the fact that the Board initially has an investigative role, and later an adjudicative role does not amount to a violation of due process. For this reason, McCollum's due process claim fails.

8

Therefore, the entry is:

The Board's findings and conclusions are AFFIRMED and McCollum's appeal is DENIED

Dated at Portland, Maine this _2 7th_ day of _December_, 2009.

Robert E. Crowley
Justice, Superior Court

Date Filed _07-21-09_      CUMBERLAND      Docket No. _AP-09-31_

County

Action _80C Appeal_

JILL D. MCCOLLUM

vs.

STATE OF MAINE BOARD OF COUNSELING
PROFESSIONALS LICENSURE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| KENNETH P. ALTSHULER, ESQ.<br>257 DEERING AVENUE<br>PORTLAND, ME 04103-4898 | JUDITH PETERS AAG<br>6 STATE HOUSE STATION<br>AUGUSTA ME 04333 |

Date of